UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSSELINE DE SAINT JUST,** : | |
| 4242 East West Highway, | |
| Chevy Chase, Maryland, 20815 : | |
| | |
| **Plaintiff,** : | |
| | **Civil Action No.: _____** |
| v. : | |
| | |
| **FIG & OLIVE DC LLC** | |
| d/b/a Fig & Olive : | |
| 133 W 19th St., Suite 300 | |
| New York, NY  10011 : | |
| | |
| **Serve:** : | |
| **Corporation Service Company** | |
| 1090 Vermont Ave., NW : | |
| Washington, DC  20005 | |
| : | |
| **Defendant.** : | |
| _____ | |

**COMPLAINT**
**(Food Poisoning – Strict Liability, Negligence)**

Plaintiff Josseline De Saint Just ("plaintiff"), by and through her attorneys of record, asserting claims against Defendant Fig & Olive USA, Inc., d.b.a. Fig & Olive DC, LLC, a District of Columbia Corporation ("defendant"), and states and alleges as follows:

### I.      PARTIES

1.      The plaintiff, Josseline De Saint Just, is a resident of Montgomery County Maryland, and is a citizen of the State of Maryland.

2.      The defendant, Fig & Olive USA Inc., d.b.a. Fig & Olive DC, LLC, is a corporation organized and existing under the laws of the Delaware. Defendant, together with its subsidiaries (collectively the "Company"), develops and operates certain restaurants. At all times

relevant to the allegations contained in this complaint, the Company was registered to do business, and did conduct business, in the District of Columbia, including at 934 Palmer Alley, N.W., Washington, D.C. 20001. The Company manufactured and sold the food products that are the subject of this action at its restaurant location in the District of Columbia.

## II.   JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 USC § 1332(a)(1) and (e) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and because the defendant has certain minimum contacts with the District of Columbia such that the maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

4. Venue in the United States District Court for the District of Columbia is proper pursuant to 28 USC § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes of action occurred in this judicial district, and because the defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## III.   GENERAL ALLEGATIONS

**The *Salmonella* Outbreak at Fig & Olive**

5. On or about September 9, 2015, The District of Columbia Department of Health (DOH) was notified of a potential foodborne disease outbreak at Defendant's Fig & Olive food establishment in Washington, D.C. On Thursday, September 10, the restaurant voluntarily closed for six days during DOH's investigation.  Ultimately, the outbreak at Defendant's restaurant caused more than 60 people to become ill, including residents of five states in addition to the

District of Columbia. Ten confirmed cases among District of Columbia and Virginia residents have been identified. An additional 150 possible cases are being investigated.

6. "Over the past six days we have been working very closely with the Department of Forensic Science and persons who ate at the restaurant who may have been impacted by this outbreak to ensure a comprehensive assessment and solution that will sustain the safety of those living, working and visiting our nation's capital," said Dr. LaQuandra Nesbitt, Director of DOH. "Fig and Olive has been very cooperative, responsive and transparent throughout this process and has complied with the directive issued from the department."

7. Fig & Olive met the following requirements, which allowed their operations to be restored by DOH:

- Provided evidence/invoices of the clean-up and sanitization of the kitchen/premises;
- Verified employee health training, which included signed forms;
- Destroyed current food inventory;
- Corrected all violations cited in recent inspections;
- Provided a Standard Operating Procedure for food handling and preparation; and
- Implemented training program to reinforce good retail practices.

8. Through follow-up inspections, DOH has been able to confirm that Fig & Olive has removed all conditions that may have contributed to the *salmonella* outbreak. DOH has increased surveillance of the establishment to ensure compliance with food safety regulations and to ultimately protect the health of the city's residents, workers and visitors.

*Salmonella*

9. The term *Salmonella* refers to a group or family of bacteria that variously cause illness in humans. The taxonomy and nomenclature of *Salmonella* have changed over the years

and are still evolving. Currently, the Centers for Disease Control and Prevention (CDC) recognizes two species, which are divided into seven subspecies. These subspecies are divided into over 50 serogroups based on somatic (O) antigens present. The most common *Salmonella* serogroups are A, B, C, D, E, F, and G. Serogroups are further divided into over 2,500 serotypes. *Salmonella* serotypes are typically identified through a series of tests of antigenic formulas listed in a document called the Kauffmann-White Scheme published by the World Health Organization Collaborating Centre for Reference and Research on *Salmonella*.

10. *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of humans and other animals, including birds. *Salmonella* bacteria are usually transmitted to humans by eating foods contaminated with animal feces or foods that have been handled by infected food service workers who have practiced poor personal hygiene. Contaminated foods usually look and smell normal. Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs, but all foods, including vegetables, may become contaminated. Many raw foods of animal origin are frequently contaminated, but thorough cooking kills *Salmonella*.

**Medical Complications of *Salmonellosis***

11. The term reactive arthritis refers to an inflammation of one or more joints, following an infection localized at another site distant from the affected joints. The predominant site of the infection is the gastrointestinal tract. Several bacteria, including *Salmonella*, induce septic arthritis. The resulting joint pain and inflammation can resolve completely over time or permanent joint damage can occur.

12. The reactive arthritis associated with Reiter's may develop after a person eats food that has been tainted with bacteria. In a small number of persons, the joint inflammation is accompanied by conjunctivitis (inflammation of the eyes), and uveitis (painful urination). *Id*.

This triad of symptoms is called Reiter's Syndrome. Reiter's syndrome, a form of reactive arthritis, is an uncommon but debilitating syndrome caused by gastrointestinal or genitourinary infections. The most common gastrointestinal bacteria involved are *Salmonella*, *Campylobacter*, *Yersinia*, and *Shigella*. A triad of arthritis, conjunctivitis, and urethritis characterizes Reiter's syndrome, although not all three symptoms occur in all affected individuals.

13.  *Salmonella* is also a cause of a condition called post infectious irritable bowel syndrome (IBS), which is a chronic disorder characterized by alternating bouts of constipation and diarrhea, both of which are generally accompanied by abdominal cramping and pain. In one recent study, over one-third of IBS sufferers had had IBS for more than ten years, with their symptoms remaining fairly constant over time. IBS sufferers typically experienced symptoms for an average of 8.1 days per month.

**Plaintiff Josseline De Saint Just's Illness**

14.  The plaintiff dined at the defendant's restaurant on Saturday, September 5 with a companion. She ordered drinks, a crostini appetizer, tuna carpaccio, and a truffle mushroom croquet, with an apple tart and vanilla ice cream.

15.  Two days later, the plaintiff began to feel extreme fatigue. And that night she began to suffer from repeated bouts of diarrhea coupled with severe abdominal cramping. The plaintiff experienced bloating and her stomach ultimately became distended.

16.  The plaintiff's symptoms lasted all week. Her abdominal cramps remained excruciatingly severe throughout. She called a physician on Thursday of that week who advised her to give a stool specimen at a local lab.

17.  Still in pain from her abdominal cramping, the plaintiff saw a physician on Friday, September 11, during a pre-scheduled appointment. The plaintiff's physician took blood

samples for testing, prescribed the antibiotic Ciprofloxacin, and the anti-spasmodic Bentyl for the abdominal cramps.

18.     The plaintiff's lab samples ultimately tested positive for *Salmonella*, at which time she was prescribed a different antibiotic.

19.     To date, the plaintiff continues to suffer from severe bloating and intermittent crampy pain. She is scheduled to visit her physician again in three weeks for an additional stool test.

### IV.     CAUSES OF ACTION

### COUNT I
### (Strict Liability)

20.     The defendant was at all times relevant hereto the manufacturer and seller of the adulterated food product that is the subject of the action.

21.     The adulterated food product that the defendant manufactured, distributed, and/or sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *Salmonella*, a deadly pathogen.

22.     The adulterated food product that the defendant manufactured, distributed, and/or sold was delivered to the plaintiff without any change in its defective condition.  The adulterated food product that the defendant manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by the plaintiff.

23.     The defendant owed a duty of care to the plaintiff to design, manufacture, and/or sell food that was not adulterated, which was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health.  The defendant breached this duty.

24.     The defendant owned a duty of care to the plaintiff to design, prepare, serve, and

sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendant breached this duty.

25. Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendant manufactured, distributed, and/or sold.

## COUNT II
### (Negligence)

26. The defendant owed to the plaintiff a duty to use reasonable care in the manufacture, distribution, and sale of its food product, the breach of which duty would have prevented or eliminated the risk that the defendant's food products would become contaminated with *Salmonella* or any other dangerous pathogen. The defendant breached this duty.

27. The defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

28. The defendant had a duty to properly supervise, train, and monitor its respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but it failed to do so, and was therefore negligent.

29. The defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances and regulations, and that were clean, free from adulteration, and safe for human consumption, but it failed to do so, and was therefore

negligent.

30. As a direct and proximate result of the defendant's acts of negligence, the plaintiff sustained injuries and damages in an amount to be determined at trial.

## V. DAMAGES

31. The plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and medical related expenses, both past and future; travel and travel-related expenses, both past and future; emotional distress, both past and future; pharmaceutical expenses, both past and future; and all other ordinary, incidental, or consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment against defendant as follows:

A. Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiff as a result of the defendant's conduct in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000);

B. Ordering statutory prejudgment interest;

C. Awarding plaintiff reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

D. Granting all such additional and/or further relief as this Court deems just and equitable.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

DATED: September 18, 2015

                             REGAN ZAMBRI LONG, PLLC

                             By: */s/ Salvatore J. Zambri*
                                 Salvatore J. Zambri   #439016
                                 szambri@reganfirm.com
                                 1919 M Street, N.W., Suite 350
                                 Washington, D.C. 20036
                                 Telephone: 202.822.1899
                                 *Co-Counsel for Plaintiff*

                             MARLER CLARK, LLP, PS

                             By: */s/ William D. Marler*
                                 William D. Marler, Esq.
                                 (Admission *pro hac vice* pending)
                                 bmarler@marlerclark.com
                                 1301 Second Avenue, Suite 2800
                                 Seattle, WA 98101
                                 Telephone: 206-346-1888
                                 *Co-Counsel for Plaintiff*